## SANDERSON v. NASHUA.

Where, after a view by the jury of the place in question, the jury returned to it, in the absence of one of the parties, and had their attention directed to various objects by the other, and afterward, upon learning the fact, the absent party waived all objections to such second view, upon certain instructions being given;—*Held*, that this afforded no cause for disturbing the verdict, unless something was done of which the plaintiff had no notice at the time of such waiver, and which did not fairly come within the scope of the notice he did receive, or unless it was something more than the impropriety of having the view in the absence of the other party.

Where the opinion of an expert is given in evidence, he may be contradicted by showing that at another time he had expressed a different opinion.

CASE, for special damage happening to the plaintiff by reason of. the insufficiency of a highway.

By direction of the court, on the motion of the defendant, the jury went from Manchester to Nashua to view the place where the plaintiff claimed he was injured, and such other objects as either party should desire the jury to see. On the return of the jury from the view, the counsel for the plaintiff stated to the court that they understood that after the jury had viewed the premises in presence of the counsel of both parties, and had left the place where the plaintiff was injured, and after the plaintiff's counsel supposed that the view was completed, all or some of the jury returned to the place where the plaintiff was injured, unaccompanied by the plaintiff, or any one representing him, and that, in the absence of the plaintiff and his counsel, and without their knowledge or consent, another view was had by the jury, and various things were said and done in presence of the jury by the defendant's .counsel, and by others interested in behalf of the city.

The plaintiff's counsel also stated to the court that in an ordinary case they should not consent to go on with the trial under such circumstances, but that in this case they proposed to waive all objection, if the court would state to the jury that it was their duty to lay out of the case, and allow to have no influence upon their minds, all that had been said, and done, and seen, when Mr. Barrett (one of the plaintiff's counsel) was not present.

The court thereupon made the statement to the jury suggested by the plaintiff's counsel, and the trial went on, with the understanding on the part of the defendant's counsel and the court that the plaintiff waived all objection to what had transpired in presence of the jury, or any of them, in the absence of the plaintiff's counsel.

The jury returned a verdict for the defendant, and the plaintiff moved to set it aside, "because, after the jury had viewed the place where the accident occurred, under the instruction of the court, they returned to the locality, and there met some officers and citizens of Nashua, and measurements were made and conversation had and held between said officers and citizens, in the presence and hearing of the jury, and as we believe both there and at other places with the jury, or some of them; that the plaintiff nor his counsel had no notice of such second view, and were not present; that one of the defendant's counsel, A. W. Sawyer, was pres-

ent at said second view, and pointed out limbs," &c. The court declined to set the verdict aside, and the plaintiff excepted.

The plaintiff claimed and testified that he was injured July 16, 1860, at night, and when it was very dark, by stepping off a bridge over a ditch, and down a distance of twelve or fifteen inches, whereby, in falling, his head struck a tree, and he claimed and introduced evidence tending to show that the effects of this blow upon the head had been great pain in the head, discharges from the nostrils, dizziness, confusion of mind, distortion of the face, partial paralysis of the limbs, loss of appetite, indigestion, emaciation, general loss of nervous vigor, and a gradual, constant and increasing loss of health, and that the injury was likely to prove fatal. The plaintiff was a painter, and had been engaged in that business for many years before that time. In 1855 he was burned about the face, hands and arms, by some of his painting materials taking fire.

There was conflicting evidence as to the condition of the plaintiff's health before July 16, 1860. Dr. Graves, one of the plaintiff's witnesses, testified that he was the family physician of the plaintiff, and that, before the injury complained of in this case, the plaintiff appeared well and healthy, and that he always considered him a hearty, vigorous and healthy man. On cross-examination he testified that he did not recollect of saying to Mr. White, or to any one, that the plaintiff would die, or suffer injury to his health, unless he quit painting, or any thing to that effect, or on that subject, but that he would not swear that he had not said so. Subject to the plaintiff's exception the defendant was allowed to prove by Mr. White that about the time the plaintiff was burned, Dr. Graves said to the witness that the plaintiff was full of paint, or full of the effects of paint, and that it was his (Dr. Graves') impression that the plaintiff would have to leave his business of painting, if he lived long.

*Morrison, Stanley & Clark*, for the plaintiff.

*George Y. Sawyer*, for the defendant.

Bellows, J. It appears from the case that the plaintiff had notice that the jury, or some of them, in the plaintiff's absence, viewed the place of the accident, with the defendant's counsel, and others interested in behalf of the city, by whom various things were said and done in the presence of the jurors; and that this objection was expressly waived by the plaintiff before proceeding to trial.

Unless, then, it is made to appear that something was done of which the plaintiff had no notice at the time of such waiver, and which did not fairly come within the scope of the notice he did receive, he can not now object. From the case as reported, it appears that the plaintiff had notice of a return to the place after the view, by the jurors, or some of them, when the ground was again viewed, and suggestions made on behalf of the defendant; and

although it must be assumed that such examination, in the absence of the plaintiff, was unauthorized and improper, yet the mere fact that the plaintiff did not know all the particulars of such subsequent examination, or of the suggestions made on the part of the defendant, would not, we think, relieve him from the effect of the waiver; unless the matter, not then brought to his knowledge, was something more than the impropriety of calling the jurors' attention to the objects connected with the injury, in the absence of the other party.

Upon a careful examination of the affidavits we do not perceive that any thing was done beyond the legitimate scope of a view, had the other party been present; nor do we think that the affidavits disclose any material facts not brought to the knowledge of the plaintiff's counsel before the trial.

It is true that Mr. Williams, one of the persons present, stated when the limbs were removed from a certain tree; and, so far as this could be regarded as testimony, it was irregular; although a party might properly call the attention of the jury to the tree, with a statement that he proposed to prove that certain limbs were removed at a certain time. That this statement went beyond that is quite probable, but still we are not prepared to regard it as so marked or material in its character as not to be embraced in the waiver. See *State* v. *Rand,* 33 N. H. 227.

Dr. Graves being called to testify to opinion as to the health of the plaintiff, might be contradicted by showing that he had before expressed a different opinion, and this is not affected by the fact that he said merely that he did not recollect expressing such an opinion. *Nute* v. *Nute,* 41 N. H. 60.

*Judgment on the verdict.*